IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

COREY WILLIAMS,

        **Plaintiff,**

v.

JEREMIAH BROWN, SERGEANT
BELCHER, JANE DOE FITZGERALD,
and JOHN DOE #'s 1-11,

        **Defendants.**

Case No. 26-cv-196-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Corey Williams, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pontiac Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Lawrence Correctional Center. In the Complaint, Williams alleges that Defendants used excessive force in violation of the Eighth Amendment.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

1

## The Complaint

On July 31, 2025, Counselor Fitzgerald walked through Williams's housing unit asking if any inmate would like to purchase a fan (Doc. 1, p. 7). Sergeant Belcher walked the unit with Fitzgerald (*Id.*). Williams was in the dayroom and approached Belcher. He informed Belcher that when he and Fitzgerald went upstairs to his living area, Williams would like to talk to Counselor Fitzgerald (*Id.*). Williams then went upstairs to his room (*Id.*).

But when Williams looked downstairs, he saw Fitzgerald was done talking to everyone (Doc. 1, p. 7). Williams yelled down to Fitzgerald asking to speak to her (*Id.*). Fitzgerald asked for his name, and Williams told her and complained that she talked to everyone in the unit except for him (*Id.*). She asked if he wanted to buy a fan and he declined, stating that he wanted to talk to her about his television (*Id.*). He told Fitzgerald his issue, but she merely turned to walk away. At that point, Williams stated, "I'm an inmate and you are a counselor, I should be able to talk to you about my problems." (*Id.* at p. 8).

Williams turned to talk to Sergeant Belcher, but he saw Belcher on his radio calling a Code 1 for a staff assault (Doc. 1, p. 8). Williams immediately got on the ground, face down with his hands behind his back (*Id.*). Belcher cuffed Williams. He maintains that he was not a threat at that point (*Id.*). The emergency response team entered the unit, jumped on Williams's back, and John Doe Officer #1 placed a mace covered finger in Williams's mouth and told him to stop talking (*Id.*). John Doe Officer #'s 2-6 bent his legs to place

2

leg restraints, causing pain (*Id.*). Although Williams called out to lieutenants standing in the area, the officers ignored him (*Id.*).

The officers placed him in a restraint chair and wheeled him out of the unit (Doc. 1, p. 8). John Doe Officer #'s 1-6 punched and spit on him, calling him racial slurs as they took him to restrictive housing and placed him in a medical room (*Id.*). At the medical room, they continued to punch, kick, and spit on him (*Id.*). John Doe #3 directed John Doe #'s 4 and 5 to place William's chair in a laid back position (*Id.*). He then ripped a hole in the spit mask on Williams's head and started to pour water in his mouth, in an attempt to drown Williams (*Id.* at pp. 8-9). Additional officers passed by the room but failed to intervene to help Williams.

John Doe #7 Lieutenant entered the room and noted that the officers had roughed Williams up; he inquired as to what Williams had done (Doc. 1, p. 9). John Doe #1 stated that Williams placed his hands on a female (*Id.*). John Doe #7 taunted Williams, challenging Williams to hit him. He also referred to Williams by a racial slur (*Id.*). Williams stated that he would attack them if he wasn't in the restraint chair (*Id.*). In response, John Doe #7 spit on Williams and left with John Doe #1.

John Doe Officer #8 came in and asked if Williams needed to see medical for his injuries (Doc. 1, p. 9). Williams answered in the affirmative. In response, John Doe #'s 2-6 punched him in the face and body (*Id.*). Each time Williams responded that he needed medical care, the officers responded by hitting Williams until he finally answered that he did not need to see medical staff (*Id.*). John Doe #1 returned to the room and sprayed

3

Williams's genitals with mace (*Id.*). He was then taken to restrictive housing and placed in a cell without a working toilet or water (*Id.*).

As a result of the use of force, Williams alleges that he suffered cuts, scrapes, and contusions to his head, face, and body (Doc. 1, p. 10. His left orbital floor was fractured, and he required surgery to repair the injury (*Id.* at pp. 10, 12-51). Williams notes that he still suffers from vision problems, numbness, and headaches (*Id.* at p. 10).

### Preliminary Dismissals

Williams alleges that several correctional officers, sergeants, and lieutenants were standing around while the response team assaulted him and passed by the medical room while the response team continued their assault (Doc. 1, pp. 8-9). He alleges that these officers failed to intervene and stop the assault. But Williams fails to refer to these officers with any specificity. While Williams may certainly refer to John Does (as he has clearly done with the individual response team members) his allegations against officers, sergeants, and lieutenants are too generic to state a claim against any specific individual. It is not even clear how many officers that Williams yelled out to for help. Thus, any claim against additional officers who failed to intervene in the assault is **DISMISSED without prejudice**.

Williams also identified John Doe #'s 9, 10, and 11 in the case caption, but failed to reference those individuals in his statement of claim. Thus, any claim against John Doe #'s 9, 10, and 11 are **DISMISSED without prejudice**.

Williams also identifies Counselor Fitzgerald and Sergeant Belcher as defendants, but it is not clear how these officials violated his constitutional rights. He alleges that

4

Counselor Fitzgerald would not speak to him about his television and Sergeant Belcher called the Code 1 for the response team, but there are no allegations to suggest that either official participated in the use of force or was deliberately indifferent in failing to stop the assault. Belcher and Fitzgerald both filed disciplinary reports against Williams for assault (Doc. 1, pp. 52-54), but Williams fails to allege any constitutional violation with respect to those reports. And it appears that the tickets were expunged after reviewing the video footage (*Id.* at p. 57). Any potential claims against Fitzgerald and Belcher are **DISMISSED without prejudice**.

**<u>Discussion</u>**

Based on the allegations in the Complaint, the Court designates the following counts:

**Count 1:** **Eighth Amendment excessive force claim against John Doe #'s 1-7 for their use of force against Williams.**

**Count 2:** **Illinois state law claim of assault and battery against John Doe #'s 1-7 for their use of force against Williams.**

**Count 3:** **Eighth Amendment deliberate indifference to medical needs claim against John Doe #'s 2-6 and 8 for failing to obtain medical care for Williams after the incident.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered**

5

**dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

At this stage, Williams states a viable claim for excessive force against John Doe #'s 1-7 in Count 1. *Wilborn v. Ealey*, 881 F.3d 998, 1006 (7th Cir. 2018) ("Correctional officers violate the Eighth Amendment when they use force not 'in a good faith effort to maintain or restore discipline,' but 'maliciously and sadistically for the very purpose of causing harm.'") (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). The allegations also adequately allege an assault and battery claim under state law. *See, e.g.*, *Shea v. Winnebago County Sheriff's Department*, No. 17-3078, 746 F. App'x 541, 548 (7th Cir. Aug. 16, 2018) (discussing assault and battery under Illinois law). Because the assault and battery claim arises from the same facts as the excessive force claim, Count 2 shall also proceed. *See* 28 U.S.C. § 1367(a); *see also Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008).

Williams also alleges a viable deliberate indifference claim against John Doe #'s 2-6 and 8 for their failure to obtain him medical care. Williams alleges that John Doe #8 asked if he wanted medical care, but that John Doe #'s 2-6 beat him every time he answered in the affirmative until Williams finally stated that he did not need care (Doc. 1, p. 9). But Williams acknowledges that John Doe #'s 1 and 7 were not in the room during this time (*Id.*). Thus, Count 3 shall proceed against John Doe #'s 2-6 and 8.

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

To help identify the John Does, the Court **ADDS** the current warden of Lawrence Correctional Center, Jeremiah Brown, in his official capacity only, to respond to discovery aimed at identifying the John Does.

## Disposition

For the reasons stated above, Counts 1 and 2 shall proceed against John Doe #'s 1-7. Count 3 shall proceed against John Doe #'s 2-6 and 8. All other claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Jeremiah Brown (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Because Jeremiah Brown is added only in his official capacity to identify the John Does, he need not file an Answer. Once Brown has entered his appearance, the Court will enter a scheduling order setting forth the guidelines for discovery.

Because Williams's claims involve his medical care, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order.

7

If judgment is rendered against Williams, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Williams is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  May 1, 2026**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendant of your lawsuit and serve him with a copy of your Complaint. After service has been achieved, the defendant will enter an appearance. After the defendant files an entry of appearance, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendant before filing any motions. Motions filed before the defendant's counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.La**